See also, Tex. Civ. App., 618 S.W.2d 927.

**Michael Gene ANDERSON and Sheri Jean Anderson, Appellants,**

v.

**J. C. ANDERSON, Appellee.**

**No. 1910cv.**

Court of Appeals of Texas, Corpus Christi.

May 20, 1982.

Rehearing Denied Aug. 26, 1982.

Second Motion for Rehearing Denied Sept. 9, 1982.

Margaret A. Pollard, White & Associates, Houston, for appellants.

David Seidler, Ellis & Andrews, Aransas Pass, for appellee.

Before NYE, C.J., YOUNG and GONZALEZ, JJ.

## OPINION

GONZALEZ, Justice.

This is an appeal from an order allowing the payment of attorney's fees out of the assets of an estate pursuant to Texas Probate Code Ann. § 243 (Vernon 1974). The will established a trust for the benefit of the deceased's two minor children, appellants, and their uncle, appellee, was named executor of the estate and trustee. Prior to

the death of the deceased, the uncle caused to be executed "change of beneficiary" forms with himself named beneficiary of the life insurance proceeds and stock which were the principal assets of the estate. The uncle employed an attorney to probate the will and the children sought to have him removed as executor and trustee of the will and also to cancel the change of beneficiary designations. The children prevailed. After the judgment became final, the uncle's attorney made a claim against the estate for payment of his attorney's fees. This was approved by the court in an ancillary proceeding. We reverse and render.

A history of the case is necessary in order to put the issue before the court in its proper perspective.[1]

In 1975, Wesley Gene Anderson, a single man, was dying of lung cancer. He executed a will in which he created a trust for the benefit of his minor children, Michael Gene Anderson and Sheri Jean Anderson, appellants, herein. He named his brother, J. C. Anderson, appellee herein, independent executor and trustee of the estate. The estate, at the time of the creation of the trust, consisted of the expected proceeds of a life insurance policy on the life of the testator and some stock, with an aggregate value of approximately Seventy Five Thousand Dollars ($75,000). The trust was to expire in 1989 with the proceeds being divided equally among the two children.

Thereafter, J. C. Anderson caused Wesley Gene Anderson to sign change of beneficiary designations of the life insurance policy and the stock and named himself as beneficiary thereby leaving the children's trust unfunded.

In May 1976, Wesley Gene Anderson died and in June 1976, J. C. Anderson filed the will for probate in the probate court of Refugio County. Shortly thereafter in June 1976, appellants through their next friend filed a will contest and this suit was transferred to the district court of Refugio

1. This appeal is a companion case to *Anderson v. Anderson,* 618 S.W.2d 927 (Tex. Civ. App.— Houston [1st Dist.] 1981, writ dism'd). This case was transferred by the Supreme Court to the 1st Court of Appeals pursuant to a docket equalization order.

County. In July 1976, a new suit was filed by the children seeking to set aside the two change of beneficiary designations above mentioned. In September 1976, the application for probate and the suit seeking cancellation of the beneficiary designations were consolidated by the court into Cause No. 5036. In June-July 1978, upon motion of the appellants, the court ordered J. C. Anderson to obtain separate counsel to represent himself individually and to represent him as independent executor of the estate of Wesley Gene Anderson. Attorney John Miller, Jr. was retained to represent J. C. Anderson as independent executor of the estate. On February 1979, Cause No. 5036 went to trial before a jury. After the announcement of ready, appellants withdrew their contest to the probating of the will with the exception of the appointment of J. C. Anderson as independent executor. The will was admitted for probate by the court sitting without a jury with the exception of the appointment of an independent executor. Mr. John Miller left the courtroom[2] and the case proceeded to trial with appellants seeking cancellation of the beneficiary designations *and* also seeking the removal of J. C. Anderson as executor and trustee of the estate. The jury found that J. C. Anderson had completed the change of beneficiary designations contrary to the instructions of Wesley Gene Anderson; that J. C. Anderson knew that the designations were contrary to his brother's instructions; and that the deceased was not aware that the designations had been completed contrary to his instructions.[3] The court denied J. C. Anderson's application to be appointed independent executor of the estate and appointed Corpus Christi National Bank, the named substitute executor under the will.

The final judgment of the court was signed on March 17, 1980, and the court ruled that all costs were to be paid by J. C. Anderson. In July 1979, approximately four (4) months after the trial, John Miller filed a claim with Corpus Christi National Bank for payment of his attorney's fees in the amount of Six Thousand Five Hundred Seventy Dollars ($6,570). Appellants objected to the payment of the attorney's fees and on September 10, 1979, the bank approved the claim and thereafter this claim was submitted to the district court in Cause No. 5036. Appellants again filed objections to the payment of said claim.

On December 16, 1980, a hearing was held on Mr. Miller's claim for compensation and the court on January 19, 1981 entered an order granting Mr. Miller's claim for attorney's fees and this order is the basis of this appeal.

Appellants bring six points of error. They contend that the trial court did not have jurisdiction to award attorney's fees because the judgment had become final; that John Miller had no standing to bring the claim for attorney's fees because § 243 of Probate Code requires that the claim be brought by the independent executor of the estate; that the Probate Code requires that the claim for attorney's fees be brought in the original probate proceedings and not as an ancillary matter; that the final judgment adjudged all cost against J. C. Anderson and, therefore, the court had no jurisdiction to adjudge costs against the estate, and that there is either no evidence or insufficient evidence to support and award against the estate for the attorney's fees.

Section 243 of the Texas Probate Code provides:

"When any person designated as executor in a will, or as administrator with the will annexed, defends it or prosecutes any proceeding in good faith, and with just cause, for the purpose of having the will

---

2. Miller had not completed his job. He was proponent of *all* of the will, not just part of it. His client was seeking to be named Independent Executor under the will. This certainly was a contested matter and, therefore, the case continued to be a "will contest."

3. The jury also found that J. C. Anderson had acted with malice and awarded the children Fifty Thousand Dollars ($50,000) punitive damages. The court declared the change of designation of beneficiary null and void but set aside the jury's answers regarding punitive damages. These matters are the subject of the previously mentioned appeal in the 1st Court of Appeals.

admitted to probate, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in such proceedings."

The Supreme Court in *Russell v. Moeling*, 526 S.W.2d 533, 535 (Tex.Sup. 1975) said:

"The import of the statute is clear: the executor administrator 'shall be allowed out of the estate his necessary expenses and disbursements.' The purpose then is to pay the cost of attorney's fees that are owed by the executor or administrator and *the allowance is not to the attorney, but to the administrator*." [citations omitted, emphasis ours.]

■ Therefore, § 243 of the Texas Probate Code by its very language allows the independent executor to make a claim against the estate for necessary expenses and disbursements including attorney's fees incurred in admitting a will to probate. In the case at bar, the independent executor *did not* make such a claim but the claim was made by the attorney, John Miller. We agree with appellants that John Miller did not have standing to bring the claim against the estate.

■ Even if Mr. Miller had had standing, the issues of good faith and probable cause were not submitted in the original probate proceedings as required by law.

The Supreme Court has set forth this rule clearly in *Russell v. Moeling, Id.* 535, 536, wherein the court stated:

"With reference to the administrator's argument to the effect that any claim for attorneys' fees and expenses must be brought, if at all, in the original will contest, we must turn first to this court's decision in *Huff v. Huff*, 132 Tex. 540, 124 S.W.2d 327 (1939) .... The holding in *Huff,* which denied to the executor the right to seek attorneys' fees in a subsequent proceeding, was construed by the court of civil appeals opinion in the instant case as one turning entirely on the

fact that the executor had been found guilty of exercising undue influence upon the testator. We do not agree. The *Huff* decision ... went on to point out:

'We think that the executor could have had submitted to the jury, along with the other issues, the question of good faith on his part in offering the will for probate; and if the jury had found that, under the circumstances, he had acted in good faith, then he would have been entitled to judgment for such attorneys' fees and court costs. *This was not done; and the judgment became final.* We do not think the rule should be extended further than this, in order to let him recover in a subsequent suit.' [Emphasis added.]

The determination fact in *Huff* then, which would likewise be controlling in the instant case, is the fact that the trial court's judgment, probating the will and awarding costs, had become final and that the prior proceeding was the proper time to have made the claim."

■ Notwithstanding the above, it is clear from the record that the estate would not benefit but in fact suffer a detriment as a result of the actions of J. C. Anderson.[4] To now order the same estate that he attempted to defraud to pay his attorney's fees is unjust and against public policy. See *Huff v. Huff*, 124 S.W.2d 327 (Tex.Sup. 1939).

The judgment of the trial court is reversed and a take nothing judgment is rendered.

Our opinion should not be deemed as conclusive or prejudicial to the right of Mr. Miller to prosecute a claim for attorney's fees against J. C. Anderson individually.

NYE, Chief Justice, dissenting.

I respectfully dissent. The majority would deny the attorney for the executor his approved attorney fees theorizing that the trial court was without jurisdiction to hear the attorney's claim even though the

---

**4.** At the time of the trial, Miller's claim for $6,570 attorney's fees exceeded the value of the estate.

claim was approved by the alternate executor, the Corpus Christi National Bank. If, as the appellant claimed, the trial court was without jurisdiction to approve the attorney fee claim, it was equally without jurisdiction to hear the claim and contest by the appellants from which this appeal originates.

In May 1976, Wesley Gene Anderson died, and in June 1976, J. C. Anderson filed the will for probate in the probate court of Refugio County. Shortly thereafter appellants filed a will contest, and the suit was transferred to the district court of Refugio County. In July 1976, a new, separate and independent suit was filed by the children seeking to set aside the change of beneficiary designations of a life insurance policy. In September 1976, the application for probate and the suit seeking cancellation of the beneficiary designations *were consolidated* by the trial court into Cause No. 5036. The appellees filed a motion requesting the trial court to order J. C. Anderson to obtain separate counsel: one to represent himself individually; and a second attorney to represent him as Independent Executor of the estate of Wesley Gene Anderson, deceased. The trial court granted the motion. The appellee, Honorable John Miller, was retained by the executor to represent Anderson in his capacity as Independent Executor of the estate. A different attorney was employed by Anderson to represent him individually in the second consolidated suit. In February 1979, the case went to trial before a jury. After the announcement of ready by all parties, the appellants withdrew their contest to the probating of the will, reserving, however, the right to challenge the appointment of J. C. Anderson as Independent Executor. The will was then admitted for probate. Mr. John Miller, having completed his job, excused himself from the court and left. The case then proceeded to trial with appellants seeking cancellation of the beneficiary designations. The jury resolved the dispute against Anderson. The trial court then appointed the Corpus Christi National Bank, the named alternate executor under the will, the Independent Executor of the estate.

A judgment of this part of the lawsuit was signed on March 17, 1980. In July 1979, John Miller filed his claim for payment of attorney's fees for his representation of the executor in the probate of the will. This claim, in the amount of six thousand five hundred seventy dollars ($6,570), was filed with the alternate executor of the estate, the Corpus Christi National Bank. The appellants objected to the payment of the attorney's fees. However, on September 10, 1979, the bank, as independent executor, approved the claim. Thereafter, the claim was entered on the claims docket of the estate. Later, the appellants filed objections to the payment of said claim in the probate court.

On December 16, 1980, a hearing was held by the trial court on Mr. Miller's claim for compensation. The appellants again objected to the claim. After the hearing, the court approved the claim and entered an order granting Mr. Miller his attorney's fees. It is from this order approving appellee's claim for attorney's fees that appellants form the basis of their appeal.

Section 243 of the Texas Probate Code provides:

"When any person designated as executor in a will, or as administrator with the will annexed, defends it or prosecutes any proceeding *in good faith, and with just cause,* for the purpose of having the will admitted to probate, *whether successful or not,* he *shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees,* in such proceedings." (emphasis added)

The procedural steps involved in presenting a claim against an estate are set forth in Sections 311 and 312 of the Probate Code which reads, in part, as follows:

"... (a) Claims Against Estates of Decedents. If a claim against the estate of a decedent has been presented within six months after the issuance of original testamentary letters or of administration, and all or part of such claim is allowed by the executor or administrator, the claim

shall forthwith be filed with the county clerk of the proper county, who shall enter the same in its proper place upon the claim docket.

\* \* \* \* \* \*

... (a) Contest of Claims. Any person interested in an estate or ward may, at any time before the court has acted upon a claim, appear and object in writing to the approval of the same, or any part thereof, and in such case the parties shall be entitled to process for witnesses, and the court shall hear proof and render judgment as in ordinary suits.

(b) Court's Action Upon Claims. All claims which have been allowed and entered upon the claim docket for a period of ten days shall be acted upon by the court and be either approved in whole or in part or rejected, and they shall also at the same time be classified by the Court."

In the present case, the court found in its order of January 19, 1981, that the claim for attorney's fees had been duly presented to the Administrator, Corpus Christi National Bank, and filed on its claims docket. The court thereby ordered that the claim for attorney's fees be approved and that "the temporary Administrator of the estate is hereby ordered to pay such claim as soon as possible." No objection was made on appeal to the finding of facts by the trial court. The allowance for attorney's fees was to the Administrator and not to the attorney. Miller properly presented the claim to both the Administrator and the court. The claim was approved and should be paid.

Appellants argue that a claim for attorney's fees and expenses incurred can only be brought in the original probate proceedings and not as an ancillary matter, citing *Russell v. Moeling*, 526 S.W.2d 533 (Tex. 1975); and *Huff v. Huff*, 124 S.W.2d 327 (Tex. 1939). Both cases are distinguishable. Both cases involved a will contest by the Independent Executor. In each case, probate of the will was denied. Here, the appellants waived the contest to the probate of the will. There was no will contest at all. Regardless of how the controversy

over the beneficiary designations was resolved, the appellants would have taken under the will, and the attorney representing the executor should have been paid. Sec. 243, Tex. Probate Code. Appellee Miller actually and properly represented the estate, as he was hired to do, in probating the will. It is inconceivable to me for the majority to argue that an attorney representing an estate for the Administrator should be required to submit issues of good faith on attorney's fees in probating a will when there was no contest to the will. Actually, the contest over the fraud in changing the life insurance beneficiary was originally and finally a separate lawsuit and was appealed as such. *Anderson v. Anderson*, 618 S.W.2d 927 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ dism'd). It would have been a complete waste of time and money (assets of the estate) to have the attorney sit in on this part of the trial in which the executor should have been a disinterested person. The cases of *Russell* and *Huff* are not controlling.

The jurisdiction matter should be controlled by Section 5 of the Probate Code. It reads, in part, as follows:

"(b) In those counties where there is no statutory probate court, county court at law or other statutory court exercising the jurisdiction of a probate court, all applications, petitions and motions regarding probate ... In contested matters transferred to the district court in those counties, the district court, concurrently with the county court, shall have the general jurisdiction of a probate court, ... *Upon resolution of all pending contested matters,* the probate proceeding shall be transferred by the district court to the county court for further proceedings not inconsistent with the orders of the district court." (emphasis added)

In the present case, at the time attorney's fees were sought, the probate matter was not final. It had not been transferred back to the county court. In my opinion, it is the

appellants who do not have standing to complain on appeal.[1]

Under the circumstances, I would affirm the judgment of the trial court and allow the attorney his court-approved fee.

## OPINION ON MOTION FOR REHEARING

GONZALEZ, Justice.

▓ In his motion for rehearing, among other things, appellee contends that we are in error in treating this case as a will contest case since appellants abandoned their objections to the will being probated. This ignores the fact that appellants' objections were abandoned *on the condition* that J. C. Anderson not be named independent executor. J. C. Anderson was not appointed independent executor under the will and was in fact disqualified by the court. Therefore, one cannot escape the conclusion that this was a will contest and appellee's claim for attorney's fees and the good faith and probable cause issues should have been tried in the same proceeding.

We adhere to our original disposition of the case and overrule appellant's motion for rehearing.

NYE, Chief Justice, dissenting.

I would grant appellee's motion for rehearing and affirm the judgment of the trial court for the reasons stated in my dissent. I would add the following with reference to the appellant's sufficiency of evidence points of error:

Where, as here, we have a non-jury trial and no findings of fact and conclusions of law requested or filed, it will be implied that the trial court made all findings necessary to support its judgment. *Burnett v. Motyka,* 610 S.W.2d 735 (Tex. 1980). The rule is that we must affirm the judgment on any theory that finds support in the evidence. *Turberville v. Upper Valley Farms,* 616 S.W.2d 676 (Tex. Civ. App.— Corpus Christi 1981, no writ). We do not look for a theory to reverse and render a trial court's judgment under these circumstances.

In reviewing "no evidence" points, this court must look only at the evidence tending to support the judgment, disregarding all contrary evidence and inferences. *In re King's Estate,* 244 S.W.2d 660 (Tex. 1951); R. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex. L. Rev. 359 (1960). In passing on "insufficient evidence" points, we must consider all the evidence, including that which is contrary to the trial court's judgment. *Burnett v. Motyka,* 610 S.W.2d 735 (Tex. 1980); R. Calvert, supra.

In the instant case, the required elements for recovery of attorney's fees include 1) good faith and just cause in the prosecution of a proceeding to probate the will, and 2) a showing that the fee is reasonable. Tex. Prob. Code Ann. § 243 (Vernon 1980). Attorney Miller's testimony that he was hired as an attorney for J. C. Anderson as proponent of the will of his brother is undisputed. The evidence reflects that the hiring of a separate attorney to represent Anderson as executor was at the insistence of appellants. This amounted to a waiver by them of the position they now assert. At the probate hearing, appellants withdrew their contest. Thus, Anderson was successful not only in having the will admitted to probate, but in his representation of the executor. These uncontroverted facts are sufficient to support the inference of good faith and just cause in prosecuting that portion of the consolidated trial.

Miller also testified without dispute regarding the amount of time he spent on the

---

1. The majority makes reference to the size of the attorney's fee; that the fee exceeded the value of the estate; and that the attorney had not completed his work. These dicta-type remarks have nothing to do with the majority's reason for reversing and rendering the trial court's judgment and should serve no purpose for their opinion. The fee had been approved by the trial court; the real value of the estate was the policies of insurance (which were in the amount of $44,000); and no reason has been advanced for the attorney to sit through the contest concerning the insurance policies when the appellants removed their objection to the probate of the estate.

case and the types of work he did. He submitted his claim to the executor. The claim was approved by the (Alternate) Executor. The trial court approved the claim. The evidence of reasonableness is undisputed and is sufficient. The majority opinion ignores all of the above.

Because the claim was properly and timely presented under the circumstances, and because the evidence is sufficient to support the award, I would grant the motion for rehearing and affirm the judgment of the trial court.